***FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER***

**Electronically Filed
Supreme Court
SCWC-11-0000686
30-JUN-2015
10:31 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

STATE OF HAWAI'I.
Respondent/Plaintiff-Appellee,

vs.

HAN KAMAKANI PHUA,
Petitioner/Defendant-Appellant.

SCWC-11-0000686

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-11-0000686; CASE NO. 3P810-0184)

June 30, 2015

RECKTENWALD, C.J., McKENNA, AND POLLACK, JJ., WITH, NAKAYAMA,
J., CONCURRING AND DISSENTING, WITH WHOM CIRCUIT JUDGE OCHIAI,
IN PLACE OF ACOBA, J., RECUSED, JOINS

OPINION OF THE COURT BY POLLACK, J.

This case concerns the right of a defendant to be
represented by counsel during criminal proceedings and the
importance of ensuring that a waiver of this right is made
knowingly, intelligently, and voluntarily. Han Kamakani Phua
attended his sentencing hearing without his lawyer, and after a

brief colloquy with Phua, the district court found that he validly waived his right to counsel and imposed sentence. The Intermediate Court of Appeals (ICA) affirmed the finding of the district court that Phua waived his right to counsel and upheld Phua's sentence. We conclude that the record does not support a finding that Phua's waiver of counsel was knowingly and intelligently made, and therefore Phua's sentence must be vacated and the case remanded for a new sentencing hearing.

## I. BACKGROUND

On July 28, 2010, the complainant and others entered the property where Phua lives and works. Phua confronted the group believing they were trespassing, and a non-violent quarrel ensued between Phua and the complainant. Phua was arrested and charged with the offense of harassment.[1] At arraignment and

---

[1] The Amended Complaint, included language from the following subsections of HRS § 711-1106(1) (1993 & Supp. 2009):

> (1) A person commits the offense of harassment if, with intent to harass, annoy, or alarm any other person, that person:
>
> . . .
> (b) Insults, taunts, or challenges another person in a manner likely to provoke an immediate violent response or that would cause the other person to reasonably believe that the actor intends to cause bodily injury to the recipient or another or damage to the property of the recipient or another;
>
> . . .
> or (f) Makes a communication using offensively coarse language that would cause the recipient to reasonably believe that the actor intends to cause bodily injury

(. . .continued)

plea, Phua appeared with counsel in the District Court of the Third Circuit (district court), entered a not guilty plea to the charge, and trial was scheduled for July 1, 2011.[2]

### A. Motion to Continue

When Phua's Mandarin interpreter did not appear at trial, his counsel requested a continuance because English is Phua's second language. Defense counsel explained that when dealing with "legal issues that are very much terms of art, there need[ed] to be an interpretation" for Phua to fully understand. The State opposed the continuance, and two State witnesses and two defense witnesses testified regarding the motion to continue.

The State's first witness--Phua's coworker and the complainant's daughter--testified that though Phua was a stock boy at Walmart who usually worked the night shift, Phua communicated and provided customer service to patrons in English. Additionally, Henry Ivy, a police officer who interacted with Phua on the day of his arrest, testified that he spoke with Phua in English, although he noted that Phua spoke

---

(. . .continued)
to the recipient or another or damage to the property
of the recipient or another.

[2] The Honorable Joseph P. Florendo, Jr. presided over the proceedings in this case.

with a slight accent.  Officer Ivy stated that Phua expressed in English his understanding of his rights and that he signed a waiver of rights in English without any difficulty.  Neither State witness knew that Phua was born in Singapore or whether Phua had any formalized education in English.

Phua's mother April Haunani Lui Phua, testified to the following: (1) Phua was born in Singapore where he was raised by his paternal grandmother who spoke no English; (2) his native languages are Chinese and Malay; (3) he was not "given English instruction in school because he did not pass the streaming exam of the country to be proficient in his native language of the country as well as English"; (4) he was considered a "special education" student because he did not pass any elementary grade levels after the first grade and repeated the sixth grade three times; (5) he suffered from "heavy dyslexia"; (6) when he worked at Walmart, he worked in the stock room with other native Chinese speakers and did not work at a counter collecting cash from customers in English; and (7) Phua, who was thirty-one years old at the time of trial, had only lived in Hawaiʻi for approximately six years.

Shelley Stephens, who previously helped Phua with legal documents in English, testified that she observed Phua was unable to understand the meaning of certain unfamiliar legal

terms or phrases without assistance. She also testified that Chinese is Phua's primary language and that Phua usually had others present to help him with legal matters.

The court denied the motion to continue the trial to a later date. The court determined that Phua had "some knowledge of English and is reasonably able to converse in English." The court explained that, although an English interpreter was perhaps preferable, it was "not necessary" for Phua's criminal trial. If Phua had trouble understanding any issue, the court would provide him the opportunity to "speak with his attorney to clarify any information that might be presented in court."[3] In response to defense counsel's request that Phua be allowed to confer with his mother during breaks if there were any comprehension difficulties, the court responded that Phua could talk to whomever he wanted during breaks. The case then proceeded to trial.

## B. Trial

Phua testified that when he heard the complainant on the property, he went down to check the pump house as there had been damage and vandalism to it in the past. When he arrived at the pump house, he found the complainant and those in her group

---

[3] The district court noted that Phua had interpreters at the last civil trial over which he presided.

nearby.  Phua previously had contact with the complainant and her family over alleged trespassing incidents on the property, which was at the time legally disputed in civil proceedings.[4]

Phua believed that the complaining witness and her group were trespassing at the pump house.  He pointed out to the complainant the "No Trespassing" sign posted on the pump house.  Phua testified that he did not ask for paperwork proving the complainant's Public Access Shoreline Hawaiʻi (PASH) rights, which would permit access to the property.  The complainant and members of her group, however, testified that Phua demanded her PASH paperwork and that she showed it to him.  After this brief interaction, a loud disagreement erupted.  Both Phua and the complainant testified that they feared for their lives due to the other's actions, although no physical contact was involved in the incident.  In defense to the harassment charge, Phua

---

[4]  The disputed property in this case was also the subject of separate civil ejectment actions against Phua and several other individuals, who allegedly occupied the land as trespassers.  The Honorable Joseph P. Florendo, Jr. also presided over these civil cases and granted summary judgment in both cases.  The complaining witness involved in this case was found to have Public Access Shoreline Hawaiʻi (PASH) rights for recreational purposes on the parcel where the incident occurred.  In both of these cases, Phua appeared pro se and was deemed to have no rights in the disputed property.

When this case commenced, one of the cases involving the complainant's PASH rights had already been decided, and the other commenced in state court after the date of the alleged harassment but prior to trial. There was also a pending federal court case.

asserted self-defense, defense of others, and defense of property.

At the end of the bench trial, the district court found Phua guilty of the charge. Phua's counsel requested a Pre-Sentence Investigation Report (PSI), and preparation of the PSI was referred to Adult Probation Services. Sentencing was scheduled for August 29, 2011.

## C. Declaration of Phua's Counsel

Prior to sentencing, on August 23, 2011, Phua filed a pro se "Motion to Ammend/Writ of Error" (sic) (Motion to Amend) seeking to notify the court of the attempted removal or transfer of a state civil matter to federal court.[5]

Two days later, on August 25, 2011, Phua's attorney filed a "Declaration of Counsel" (Declaration). The Declaration stated counsel planned to seek a continuance of the sentencing hearing because he was required to be at a trial on another matter in Hilo on the scheduled hearing date.[6] Counsel stated he did not file a formal motion to continue the sentencing date because Phua indicated that he wanted to be present on the

---

[5] For a description of the civil proceedings, see supra, note 4.

[6] Counsel indicated he would be available the week following the scheduled hearing date.

scheduled date and time, even if that meant appearing without counsel.

The Declaration presented two scenarios for the court to consider based on whether or not Phua wished counsel to be present at sentencing: "If on his appearance [Phua] wishes counsel present, [then] please consider this a motion for continuance. Otherwise, if Mr. Phua wishes to waive counsel for sentencing [then] please refer to the Presentence Investigation Report and this counsel's submission to same which I understand is contained therein."

Accordingly, if Phua wished to waive counsel at sentencing, counsel asked the court to refer to the PSI, and argued for leniency in sentencing, noting Phua was caught in a stressful situation related to civil matters. He also recommended no jail or one day, already served, as Phua had no other criminal record:

> This counsel strongly notes that the fact that [Phua] has no other criminal record. He felt provoked in a stressful situation that appears to be a civil matter that is being addressed through the civil courts. Defense Counsel recommends that no jail or 1 day as already served be considered, as the process has been sufficiently educational.

(Emphases added).

Counsel pointed out in the Declaration that as of August 25, 2011, he had not received the PSI but that he had contacted probation services to fax it to him. Counsel

- 8 -

indicated that he would email and mail a copy to Phua when he received it.  However, the record does not indicate whether defense counsel received the PSI from probation services or whether he forwarded it to Phua before the sentencing date.

## D. Sentencing Hearing

Four days later, on August 29, 2011, Phua appeared at the sentencing hearing without counsel.  The district court did not calendar the Declaration as a motion to continue or note it in any other way in the minutes for the day.  The court also did not mention the Declaration during the proceedings or ask Phua if he wished to continue the hearing to a later date with counsel present.  Rather, the court initially asked whether Phua intended to proceed without counsel:

> THE COURT:  Okay.  Do you want to proceed with this case without your attorney?
>
> MR. PHUA:  I have let my attorney go, and that's why I have filed this document right in front of me that I have submitted to the Court.  Last Thursday I filed it.
>
> THE COURT:  Okay.  So you have fired your attorney?
>
> MR. PHUA:  Yes.

The court did not inquire as to why Phua had fired his counsel; there is no indication of any problems between Phua and counsel other than counsel's unavailability for the scheduled sentencing hearing.  The court continued its colloquy with Phua:

> THE COURT:  Okay.  Do you want to proceed and represent yourself?

> MR. PHUA: Yes, your Honor.
>
> THE COURT: You want to give up your right to an attorney for this hearing today?
>
> MR. PHUA: Yes.
>
> THE COURT: Okay. Do you understand that you're entitled to have an attorney represent you and if you cannot afford one, the Court can appoint one for you? Can I see the file?
>
> MR. PHUA: <u>No, I was not aware of that but</u> –
>
> THE COURT: <u>Do you still wish to proceed without an attorney?</u>
>
> MR. PHUA: Yes.

(Emphases added). Phua's response that he "was not aware" of the right to appointed counsel is not further clarified.[7]

Next, the court informed Phua generally about counsel's role, determined Phua's age and level of education, and confirmed that no one was forcing him to proceed without counsel:

> THE COURT: Now, an attorney can provide you with information and advice, can represent you at all stages of these proceedings, and can speak for you in court. Do you understand?
>
> MR. PHUA: Yes.
>
> THE COURT: And if you represent yourself, you will be opposed by a prosecuting attorney who is more experienced at trial, and you would be at a disadvantage in terms of knowledge and understanding of court practice and procedure.
>
> MR. PHUA: Yes.
>
> THE COURT: How old are you?

---

[7] Phua was not represented by court-appointed counsel during the proceedings.

- 10 -

MR. PHUA:  Thirty-one.

THE COURT:  How many years of education have you received?

Mr. PHUA:  High school.

THE COURT:  And anyone forcing you to represent yourself?

MR. PHUA:  No.

THE COURT:  Okay.  All right.  The Court would find that you have knowingly and voluntarily waived your right to an attorney with an understanding of the nature and elements of the charge.  This is for sentencing, so you've heard all of the evidence.

MR. PHUA:  But –

THE COURT: And does the state have any comments with regard to sentencing?

The record does not reflect any further inquiry by the court into Phua's decision to proceed without counsel, including whether Phua understood the maximum penalties that could be imposed for the offense of which he had been convicted.

The court then proceeded directly to sentencing.  Phua was not asked if he had received a copy of the PSI, and consequently, there was no inquiry as to whether Phua had any corrections or additions to the PSI.  When the State was asked for its sentencing recommendation, the prosecutor referred to the contents of the PSI.  Phua interrupted the prosecutor asking for a "motion to strike because that is hearsay."

After the State's argument, the court asked Phua if he wanted to make "any statement," without specifically referring

- 11 -

to sentencing.  Phua responded with statements about his Motion to Amend:

> THE COURT:  Okay.  And, Mr. Phua, do you want to make any statement?
>
> MR. PHUA:  Yes, your Honor.  On August 23rd, I had filed a motion to amend and slash writ of error that my attorney at the time, Gary Zamber – I had told him that these two cases before me in this document, 195 and 131, were pertinent subject matter to this harassment charge.  And I told him to remove the case to the federal court, to consolidate it, and at that time he had told me that I had no such right.
>
> THE COURT:  Well, he's right.  He's right.
>
> MR. PHUA:  I haven't finished, your Honor.  And that the case 195 and 131, that the case has been removed to the federal court and that by allowing this case to go forward would only affect judgment due to defense of property.
>
> And due to my sovereign rights, I feel that the Article I court, which is this court that I'm in right now, does not have the rights or jurisdiction over me, the sovereign; that only Article III, a competent court of the federal court in Honolulu, the Hawaiʻi District Court of the United States, has jurisdiction to try me.

(Emphases added).

The Court asked Phua why a federal court would have jurisdiction over his case but not a state court.  Phua explained that he was a "sovereign" and that he was choosing a court to "fit [his] needs."  Phua then explained why he had filed his writ of error:

> And that's why I filed a writ of error because it's judgmental because the defense – well, the prosecutor had attached the summary judgment and had my case into a land issue that there was a witness called representing the county, and I feel that I was not fairly recognizing the case as I told my attorney that I wanted to file a removal.

- 12 -

> Whether or not if that was granted, at that time I did not sen[d] my paper to the federal court, which my – I have attached on June 20th. Chief Justice Susan Mollway[8] stamped approval for my case to be removed to the federal court. But because I had trust my attorney to represent me at the time, that he would look out for my interests and only my interests, and I feel that he has failed to represent me fairly.

The court then denied Phua's Motion to Amend, which was "in the file" and sentenced Phua to the maximum five-day jail term allowed for a term of probation for the harassment offense:

> THE COURT: Okay. So I see that there is a motion to amend in file, and if what you just told me is the basis of that motion, I will deny it. I don't find any good cause to grant that request. This is a state case. This Court has jurisdiction over the charge and over you, and the Court has already rendered a decision at a trial. So your request to amend, if I understand you correctly, to transfer this case to the federal district court has no basis in fact or law, and I will deny it.
>
> With regard to sentencing, the Court has considered the presentence investigation and the provision in Sections 706-606 and 706-621. I will place you on probation for a period of six months. I will order you to abide by the terms and conditions – general terms and conditions of probation, order you to pay a criminal injury fee of $30 and a probation fee of $75. I will order you to serve a sentence of jail of five days. I'll allow credit for one day.[9]

During the proceeding, Phua did not make a statement regarding sentencing for the offense, or address any mitigating factors

---

[8] Chief Judge Susan Mollway is a federal district judge of the United States District Court for the District of Hawaiʻi.

[9] Harassment is a petty misdemeanor offense. HRS § 711-1106(2). For a petty misdemeanor, the court may sentence a person to a jail term not exceeding thirty days. HRS § 706-663 (1993). Alternatively, a court may impose a term of probation of up to six months and up to one year with a finding of good cause. HRS § 706-623(1)(d) (1993 & Supp. 2009). As a condition of probation in petty misdemeanor cases, the court may also impose a jail term not exceeding five days. HRS § 706-624(2)(a) (1993 & Supp. 2006).

- 13 -

regarding the incident, his lack of a criminal record, or the possible sentencing dispositions.

### E. Intermediate Court of Appeals

On September 16, 2011, Phua filed a Notice of Appeal to the Intermediate Court of Appeals (ICA).  Phua asserted on appeal that the district court erred in concluding that he knowingly and intelligently waived his constitutional right to counsel.

Phua contended the district court's overall examination was "woefully deficient."  He highlighted that the court should have inquired into primary factors affecting his ability to comprehend--including his education, work history, and experience with the criminal justice system--before informing him of the risks of self-representation because the information elicited would have put the court on notice that a more in-depth examination of waiver of counsel was necessary. At the very least, Phua asserted that the court should have made him aware of the maximum possible punishment and any other facts essential to a broad understanding of the charges against him.

Phua also argued that the district court erred by ignoring his response that he was not aware of the right to court-appointed counsel and in failing to further inform him of that right if he could not afford representation.  Phua

- 14 -

contended that he was unable to understand the consequences of his actions when he decided to appear pro se at sentencing and that there was nothing to show his familiarity with the legal system.

The State countered that the court did not violate Phua's right to counsel at sentencing because Phua effectively waived his right by firing his counsel, by failing to seek replacement counsel, and by not seeking a continuance of his sentencing hearing. The State also maintained the district court sufficiently advised Phua of his right to court-appointed counsel and gave him enough time to request counsel or seek new counsel. The State contended "it was not necessary to establish that [Phua] had prior experience representing himself in a criminal trial" to allow him to proceed pro se because he had already been found guilty at trial.

Moreover, the State argued that Phua failed to show any "substantial detriment" resulting from self-representation. The State asserted that Phua's refusal to take "court warnings about self-representation seriously enough to obtain counsel does not mean that the State or complainants should suffer the consequences of [Phua's] stubborn attitude and reckless manner by being deprived of the finality of a conviction and sentence."

In its November 19, 2013 Summary Disposition Order (SDO), the ICA concluded that the district court's inquiry and explanation of Phua's waiver of counsel was adequate because "the record need not reflect a discussion between the court and a defendant illuminating every [Dickson] factor." The ICA also found the district court sufficiently informed Phua of his right to court-appointed counsel if he could not afford one, "albeit in the form of a question rather than a statement."

Further, the ICA found that Phua "articulated no reason why the District Court's inquiry about his education, work history, and experience after warning him of the possible punishment and advising him of the risks of self-representation was prejudicial." The ICA noted that the record demonstrated that Phua was "adequately informed of the risks of self-representation, the right to private or appointed counsel, and that the waiver was made knowingly and voluntarily." The ICA concluded the district court "did not plainly err by finding that Phua waived his right to counsel during sentencing."

## F. Application for Writ of Certiorari

Phua presents the following questions in his Application for Writ of Certiorari (Application): (1) whether the ICA gravely erred in holding that the district court did not plainly err when it found Phua knowingly and intelligently

waived his right to counsel for sentencing; and (2) whether the district court erred by failing to personally address Phua regarding his right to pre-sentence allocution.

With regard to the first question presented, Phua advances similar arguments raised before the ICA.  He asserts that the record reflects the district court's examination was insufficient to establish a knowing and intelligent waiver of counsel and to assure his awareness of the risks of self-representation.  Phua further suggests his ability to "defend his interests on a level playing field was substantially affected by the lack of counsel during sentencing."  Phua also argues that the district court erred in failing to inform him of the dangers and disadvantages of self-representation and that this affected the outcome of the sentence and therefore "was not harmless beyond a reasonable doubt."

Concerning the second question presented, Phua contends the district court erred when it failed to personally address him regarding pre-sentence allocution because when the court asked for "any statement," Phua referenced his pro se Motion to Amend and did not assert his right to allocution. Phua contends the court denied his Motion to Amend and proceeded directly to sentencing without "further affording [him] an opportunity to make a statement regarding sentencing and to

- 17 -

present any information in mitigation of his punishment."
Although Phua acknowledges he did not raise this issue on appeal
before the ICA, he urges this Court to notice plain error
pursuant to Rule 28(b)(4) of the Hawaiʻi Rules of Appellate
Procedure (HRAP) (2010).[10]

The State did not respond to Phua's Application.

## II. STANDARD OF REVIEW

We review questions of constitutional law by
exercising our own independent constitutional judgment based on
the facts of the case.  E.g., State v. Rogan, 91 Hawaiʻi 405,
411, 984 P.2d 1231, 1237 (1999).  Therefore, we review questions
of constitutional law under the right/wrong standard.  E.g.,
State v. Mallan, 86 Hawaiʻi 440, 443, 950 P.2d 178, 181 (1998).

## III. DISCUSSION

### A. Waiver of Counsel Inquiry

Both the Hawaiʻi Constitution and the United States
Constitution guarantee a person accused of a crime the right to
be represented by counsel "at every critical stage of the
prosecution."  Reponte v. State, 57 Haw. 354, 361, 556 P.2d 577,
582 (1976) (citing United States v. Ash, 413 U.S. 300 (1973)).
A "critical stage" of the prosecution includes "any stage where

---

[10]    HRAP 28(b)(4) states that any point of error not presented on
appeal in accordance with Rule 28 "will be disregarded, except that the
appellate court, at its option, may notice a plain error not presented."

potential substantial prejudice to [a] defendant's rights inheres," and it has long been settled that this includes sentencing.  State v. Pitts, 131 Hawaiʻi 537, 544, 319 P.3d 456, 460-61 463 (2014) (quoting State v. Masaniai, 63 Haw. 354, 359, 628 P.2d 1018, 1022 (1981)).  The assistance of counsel at sentencing is of paramount importance because it is an "oftentimes complicated part of the criminal process that contains subtleties which may be beyond the appreciation of the average layperson seeking to represent him/herself."  D'Ambrosio v. State, 112 Hawaiʻi 446, 464, 146 P.3d 606, 624 (2006) (quoting United States v. Salemo, 61 F.3d 214, 220 (3d Cir. 1995)).

When a defendant elects to proceed pro se, the record must indicate that the defendant was offered counsel, but he or she "voluntarily, knowingly, and intelligently rejected the offer and waived that right."  State v. Dickson, 4 Haw. App. 614, 619, 673 P.2d 1036, 1041 (1983).[11]  The trial court must

---

[11]    The minority quotes a portion from Iowa v. Tovar, 541 U.S. 77 (2004), for the proposition that Miranda warnings "adequately inform[] the defendant of his [or her] Sixth Amendment right to counsel."  See minority at 3 (alterations in original) (quoting Tovar, 541 U.S. at 90).  In doing so, the minority misapplies Justice Ginsburg's opinion in Tovar.  The passage cited by the minority was addressing Patterson v. Illinois, 487 U.S. 285 (1988), and stated as follows:

> Patterson concerned postindictment questioning by police and prosecutor. At that stage of the case, we held, the warnings required by Miranda v. Arizona, 384 U.S. 436 (1966), adequately informed the defendant not only of his Fifth Amendment rights, but of his Sixth Amendment right to counsel as well. Miranda warnings, we said, effectively

(. . .continued)

- 19 -

ensure two requirements are met: first, the waiver of counsel is "knowingly and intelligently" made, and second, "the record is complete so as to reflect that waiver." Id. The latter requirement arises because appellate courts are charged with determining from the record whether there was an unequivocal waiver, which was voluntarily and freely made. Id. at 621, 673 P.2d at 1042.

Dickson set forth three areas of "specific waiver inquiry" factors to assist trial courts: (1) the particular facts and circumstances relating to the defendant that indicate the defendant's level of comprehension; (2) the defendant's awareness of the risks of self-representation; and (3) the defendant's awareness of the disadvantages of self-representation. Id. at 619-20, 673 P.2d at 1041-42. Under

(. . .continued)
convey to a defendant his right to have counsel present during questioning.

Tovar, 541 U.S. at 89. Thus, the Court in Tovar noted that Miranda warnings were adequate to inform a defendant of his Sixth Amendment right to counsel at the stage of postindictment questioning by police and prosecutor. 541 U.S. at 89. This case involves a defendant waiving the right to counsel during a sentencing proceeding. We apply Article 1 section 14 of the Hawaiʻi Constitution, which guarantees the assistance of counsel for an accused's defense in criminal prosecutions and court-appointed counsel for an indigent defendant. See Haw. Const. art. I, § 14; State v. Merino, 81 Haw. 198, 219, 915 P.2d 672, 693 (1996). "In an appeal involving the question of whether one has been deprived of the right to counsel," our task is to determine whether the record reflects that "there was an unequivocal waiver, which was voluntarily and freely made, and based upon an intelligent awareness of the benefits associated with representation by counsel and the dangers and disadvantages of self-representation." 4 Haw. App. at 622, 673 P.2d at 1042.

Dickson, the first factor dictates the level and depth of the court's inquiry regarding the second and third factors.  Id. at, 619, 673 P.2d at 1041.

Thus, Dickson indicates that a "trial court should first examine" the facts and circumstances particular to the defendant that will assist the court in assessing the defendant's level of comprehension.  Id.  Once this initial inquiry is complete, the trial court may tailor its colloquy with the defendant to ensure that the court adequately conveys the risks and disadvantages of self-representation in a manner that the defendant will be able to understand.  While courts are not required to strictly adhere to Dickson's analytical framework, it provides an important tool to ensure waivers are made knowingly and intelligently in addition to establishing a complete record for appellate review.

## 1.  Background and Comprehension of the Defendant

Once the defendant expresses an interest in proceeding pro se, Dickson recommends that the court first explore facts and circumstances pertaining to the defendant that will allow the court to determine the defendant's level of comprehension. Such circumstances include age, education, English language skills, mental capacity, employment background, and prior experience with the criminal justice system.  This examination

of the "particular facts and circumstances relating to the defendant . . . is necessary to allow the trial court to determine the level and depth to which its explanation and inquiry must extend."  Dickson, 4 Haw. App. at 619, 673 P.2d at 1041.

In this case, the district court's inquiry into Phua's particular circumstances was limited.  The court questioned Phua about his age and whether he attended high school.  However, there was other information before the court that suggested a further inquiry into Phua's background was necessary.  As to his education, Phua's mother testified at trial that he was considered a "special education" student, he did not pass any elementary grade levels after the first grade, and he repeated the sixth grade three times.  The court's inquiry did not address these matters and further inquiry as to where Phua was educated and whether he received a high school diploma may have benefited the court's analysis.

Additionally, the court did not inquire into Phua's English language skills even though the court was on notice that English was Phua's second language.  A "language barrier" between the defendant and the court is a "salient fact" that puts the trial court on notice that a defendant's waiver may be "less than knowing and intelligent."  State v. Gomez-Lobato, 130

- 22 -

Hawaiʻi 465, 471, 312 P.3d 897, 903 (2013) (quoting United States

v. Duarte-Higareda, 113 F.3d 1000, 1003 (9th Cir. 1997)).  In

this case, the court ruled at trial that Phua's language ability

was adequate to proceed without an interpreter.  However, when

the court made this ruling, Phua had the assistance of counsel

to help him in understanding legal terms and the nature of the

proceedings.  In fact, the court specifically mentioned that if

Phua had trouble understanding any issue, the court would

provide Phua an opportunity to speak with his attorney for

clarification.  Given the potential language barrier, the

district court should have further questioned Phua in this

regard.

Another important circumstance that should have been

addressed by the trial court is Phua's prior experience or

familiarity with criminal trials.  A defendant's experience, or

knowledge of, the court system may be a factor in determining

that a valid waiver was made.  See Dickson, 4 Haw. App. at 622-

23, 673 P.2d at 1040, 1043 (finding that the record did not

indicate a knowing and intelligent waiver of counsel where there

was nothing to show that the defendant had previously

represented himself, that he was familiar with a felony jury

trial situation, or that he was aware of the pitfalls of

proceeding pro se, even though the record indicated the

- 23 -

defendant had "many contacts with the legal system"). While Phua was involved in two prior civil cases,[12] Phua's counsel indicated in his Declaration that Phua had no prior criminal record.

It is questionable whether Phua perceived the distinction between criminal and civil actions. When given an opportunity to make a statement regarding his sentence, Phua instead expressed his desire to have the case removed to federal court and consolidated with his civil cases. Phua further expressed that a federal court "might be able to fit [his] needs" and that "Chief Justice Susan Mollway stamped approval for [his] case to be removed to the federal court." Phua did not address the State's recommended sentence, nor did he make any suggestion of what an appropriate sentence would be.

The district court's inquiry into Phua's background and understanding not only was lacking in depth, but it came at the end of the court's colloquy with Phua. The court questioned Phua concerning his age and education only at the end of the waiver colloquy after briefly informing him of the pitfalls of

---

[12] The district court took judicial notice of its judgments in two cases involving possession of the land over which the dispute in this case arose. Phua was a defendant in one of those civil cases, in which he appeared pro se. The minutes reflect that Phua appeared at the hearing on the motion for summary judgment with an interpreter. In the second case, in which Phua was not a party, Phua was present with an interpreter at the hearing on the plaintiff's motion for summary judgment.

self-representation.  <u>Dickson</u> indicates that the first area of inquiry is "necessary to allow the trial court to determine the level and depth to which its explanation and inquiry must extend."  <u>Id.</u> at 619, 673 P.2d at 1041.  Without this initial examination, the trial court may lack the requisite information to determine the defendant's level of comprehension necessary in order to ascertain whether the defendant understood the risks and disadvantages of self-representation.  Here, given Phua's limited education, his potential language barrier with the court, and his unfamiliarity with the criminal justice system, further inquiry into Phua's background should have been conducted by the district court before proceeding to the court's warning of the risks and disadvantages of waiving counsel.[13]

## 2. Defendant's Level of Understanding of the Risks and Disadvantages of Self-Representation

Dickson directs that once the court completes its examination of the defendant's background and level of comprehension, the court may then move onto the second and third areas of inquiry, which involve warning the defendant of the

---

[13]  We do not, as the minority indicates, find that the trial court was constitutionally required to conduct further inquiry into Phua's background. See minority at 4.  Rather, we adopt the recommendations of Dickson, which suggests areas of inquiry to assist courts in obtaining a valid waiver and has been the governing law in Hawaiʻi courts for over thirty years.  Given the record in this case, Phua's proficiency in English may be relevant to the court's inquiry on remand.

risks particular to the defendant in proceeding without counsel, and then explaining to the defendant the inherent disadvantages of self-representation. See 4 Haw. App. at 619-20, 673 P.2d at 1041; Wayne R. LaFave et al., Criminal Procedure § 11.5(c). The record must reflect that the defendant understands what he or she is doing and that the decision is made "with eyes open." Faretta v. California, 422 U.S. 806, 835 (1975)).

Although the trial court "is not required to give the defendant a short course in criminal law and procedure," the judge's warnings must reflect more than "vague, general admonishments, without reference to specific" risks or disadvantages. Dickson, 4 Haw. App. at 620, 673 P.2d at 1042. The extent and depth of the court's inquiry and explanation of the second and third factors should respond to the court's perception of the defendant's level of understanding. The purpose of the trial court in this regard is not simply to mechanically provide the defendant with the information, but rather, the court should engage the defendant to ensure that the waiver is intelligently and voluntarily made.

In some circumstances, it may be necessary for a trial court to ask follow up questions to confirm the defendant's understanding of the court's warnings of the risks of waiving

counsel and the disadvantages of self-representation.[14] This is particularly true in cases where there is a potential language barrier between the defendant and the court--as there was in this case.[15] See Gomez-Lobato, 130 Hawai'i at 472, 312 P.3d at 904. In Gomez-Lobato, this court found that a language barrier between the court and the defendant "should have prompted the . . . court to ask additional questions to verify that [the defendant] understood the right he was waiving." Id. at 479, 312 P.3d at 912.

### a. Risks of Self-Representation

The second area of inquiry set forth in Dickson is designed to "fully assure that the defendant is informed of the risks of self-representation." 4 Haw. App. at 619-20, 673 P.2d at 1041. The court should therefore make the defendant aware of "the nature of the charge, the elements of the offense, the pleas and defenses available, the punishments which may be imposed, and all other facts essential to a broad understanding of the whole matter." Id. (citations omitted). This information is essential to a defendant's understanding of the personal risks of self-representation. Id.

---

[14] LaFave et al., supra note 11, § 11.5(c) suggests that trial court follow up any reference to a risk or disadvantage with an inquiry designed to reveal whether the defendant understands the court's warning.

[15] See supra Part III.A.

In this case, the district court did not address the potential risks of self-representation with Phua. Most significantly, the court did not inform Phua of the potential punishment that could be imposed at the sentencing proceeding.[16] It is unlikely that a record could reflect a knowing and intelligent waiver of counsel at sentencing without the defendant being apprised of such basic information as the maximum or range of punishment that may be imposed. See State v. Hartman, 349 A.2d 223, 225 (Vt. 1975) ("If a defendant . . . is unaware of the nature of the charges and the range of the allowable punishment at the time of his decision to represent himself, the waiver of his rights . . . is not made knowingly and intelligently."). This is particularly true in this case where the record reflects that Phua had limited or no familiarity with the criminal justice system.

Since information regarding the potential sentence is fundamental to an understanding of the risks of waiving counsel, trial courts should take care to ask questions that inform a defendant of this critical information. The record shows no

---

[16] The ICA misapprehended the record in this case: "Phua articulates no reason why the District Court's inquiry about his education, work history, and experience after warning him of the possible punishment and advising him of the risks of self-representation was prejudicial." (Emphasis added). No such warning regarding the possible punishment occurred in this case.

indication that Phua was informed of or understood the maximum penalty that could be imposed at sentencing; consequently we cannot find that his waiver of counsel was knowingly and voluntarily made.

**b.    Disadvantages of Self-Representation**

Finally, Dickson provides that a trial court must also inform the defendant of the inherent disadvantages of self-representation before a waiver of the right to counsel is obtained.  4 Haw. App. at 620, 673 P.2d at 1042-43.  An essential obligation in this regard is to meaningfully inform the defendant of his or her right to the assistance of counsel. LaFave et al., supra, § 11.3(a).  Such information may be conveyed by the following questions:

> Because of the seriousness of the offense and the serious consequences of being found guilty, do you understand that you have a Constitutional right to be represented by an attorney at a sentencing hearing?

> Do you understand that if you cannot afford an attorney, you have the right to have free legal representation through the public defender's office or a court appointed lawyer?[17]

The record demonstrates that Phua was not fully aware of his right to court-appointed counsel.  When asked whether he understood his right to a court appointed attorney if he could

---

[17]    Under HRS § 802-2, "[i]n every criminal case or proceeding in which a person entitled by law to representation by counsel appears without counsel, the judge shall advise the person of the person's right to representation by counsel and also that if the person is financially unable to obtain counsel, the court may appoint one at the cost to the State."

not afford one, Phua responded, "No, I was not aware of that . . . ." The court did not further discuss the right to court-appointed counsel with Phua but instead asked him whether he still wished to proceed without an attorney. We find that Phua's response that he was not aware of the right to a court-appointed attorney required further explanation and inquiry. See State v. Young, 73 Haw. 217, 220-21, 830 P.2d 512, 514 (1992) (noting that "waiver of a fundamental right is never presumed" and finding that where record is unclear as to whether defendant is waiving his right to jury trial, the court should conclude the defendant is not waiving the right); see also State v. Gomez-Lobato, 130 Hawaiʻi 465, 469, 312 P.3d 897, 901 (2013) ("[T]he court should also engage in an oral colloquy with the defendant to establish that the waiver was knowing, intelligent, and voluntary."); State v. Ibuos, 75 Haw. 118, 122, 857 P.2d 576, 578 (1993) ("The necessity for colloquy between the court and a defendant is especially apparent in light of the importance we place on the personal nature of a defendant's right to a jury trial.").[18]

---

[18]    In finding this exchange sufficient under Miranda ("No, I was not aware of that . . . ."), the minority reduces the judge's role to merely notifying a defendant of his constitutional rights, without responsibility to clarify when the defendant expresses confusion or lack of understanding regarding the right that is being advised. See minority at 3-6.

(. . .continued)

- 30 -

Once informed of the right to counsel or court-appointed counsel, the "defendant's relinquishment of that right must be clear and unequivocal."  LaFave et al., supra, § 11.3(a); see also Young, 73 Haw. at 220, 830 P.2d at 514.  Dickson summarizes the information that a trial court should inform a defendant regarding the disadvantages of self-representation:

> [T]he trial court should inform the defendant: of his right to counsel, whether private or appointed; that self-representation is detrimental to himself; that he will be required to follow all technical rules and substantive, procedural, and evidentiary law; that the prosecution will be represented by able counsel; that a disruption of the trial could lead to vacation of the right to self-representation; and that if voluntary self-representation occurs, the defendant may not afterward claim that he had inadequate self-representation.

Dickson, 4 Haw. App. at 620, 673 P.2d at 1041-42 (emphasis added) (citations omitted).

---

(. . .continued)

Additionally, the minority's conclusion, which is premised on the Miranda doctrine, is misplaced.  "Miranda protects against the coercive pressures of custodial interrogation."  Wayne R. LaFave et al., 2 Criminal Procedure § 6.4(h) (3d ed.).  On the other hand, the Sixth Amendment secures the right to counsel in judicial proceedings. See State v. Luton, 83 Hawaiʻi 443, 448, 927 P.2d 844, 849 (1996) ("An individual has a right to counsel under the sixth amendment to the United States Constitution and article I, section 14 of the Hawaiʻi State Constitution which guarantees an accused the right to assistance of counsel for his or her defense.  This right "attaches at critical stages of the criminal prosecution." (alterations omitted) (internal quotation marks and citations omitted) (quoting State v. Liulama, 9 Haw. App. 447, 453 n.5, 845 P.2d 1194, 1199 n.5 (1992); State v. Masaniai, 63 Haw. 354, 358, 628 P.2d 1018, 1022 (1981))).  The distinction between these two constitutional amendments does not render our decision "unprecedented." See minority at 5.

- 31 -

Although the district court informed Phua of some of the disadvantages of self-representation, the record does not indicate clearly whether Phua understood the seriousness of his decision to waive his right to counsel. The court might also have warned Phua in simple terms that "self-representation is detrimental to himself" and urged him to reconsider. Id.

In this case, the district court's inquiry into the disadvantages of self-representation is a series of yes or no questions with little opportunity for Phua to express confusion or ask questions. Additional questions, or varying the form of the questions, may have assisted the district court to verify that Phua understood the right he was waiving. See Gomez-Lobato, 130 Hawaiʻi at 479, 312 P.3d at 912. Further, a trial court may find it beneficial to conclude the inquiry with a question seeking an affirmation of the defendant's desire to waive the right to counsel--e.g., "Understanding all that I have explained to you, do you still wish to waive your right to be represented by a lawyer and to represent yourself at trial?" Had the court concluded its inquiry by asking Phua if he still desired to waive his right to counsel, Phua would have had an opportunity to confirm or change his mind in light of the court's warnings.

### 3. Validity of Phua's Waiver

The record in this case is critically deficient to support a finding that Phua's waiver of his right to counsel was intelligently and knowingly made. There were circumstances in this case necessitating further inquiry into Phua's background, and the record does not reflect that Phua understood the risks and disadvantages of waiving counsel. The fact that the trial court did not warn Phua of the range of allowable punishment in this case is alone sufficient grounds for vacating the sentence.[19] Accordingly, this case must be remanded to the district court for a new sentencing proceeding.

### B. Pre-Sentence Allocution

Phua also contends that the district court erred by failing to personally address him regarding his right to pre-sentence allocution. We do not address the merits of this contention in light of our conclusion that Phua did not knowingly and intelligently waive his right to counsel. Nonetheless, we reiterate the importance of a defendant's right

---

[19] Since both this opinion and the minority conclude that the district court's failure to advise Phua of the potential punishment is sufficient ground for vacating the sentence, it is unnecessary to determine whether "sentencing may require a less stringent colloquy." Minority at 14. We note however that a sentencing proceeding may include extended term sentencing, involving presenting of evidence, cross-examination, argument, and submission of jury instructions. We therefore specifically decline to address this issue.

to pre-sentence allocution under the Hawaiʻi Constitution and our law.

State v. Chow recognized the fundamental importance of a defendant's right to pre-sentence allocution.[20]  77 Hawaiʻi 241, 246-47, 883 P.2d 663, 668-69 (App. 1994).  Under Chow, trial courts must ensure that its mandate is complied with during sentencing proceedings, particularly as it is "essential to fair treatment."  Id. at 250, 883 P.2d at 672.  Accordingly, "[t]rial judges before sentencing should, as a matter of good judicial administration, unambiguously address themselves to the defendant" providing a personal invitation to speak prior to sentencing.  Id. at 248, 883 P.2d at 670 (quoting Green v. United States, 365 U.S. 301, 305 (1961)).  The right is one easily administered by the trial court by the following inquiry: "Do you, . . . [(defendant's name)], have anything to say before I pass sentence?"  Id. at 248, 883 P.2d at 670 (alterations in original) (quoting Green v. United States, 365 U.S. 301, 305 (1961)).

---

[20]  See also HRS § 706-604(1) (1993 & Supp. 2006) ("Before imposing sentence, the court shall afford a fair opportunity to the defendant to be heard on the issue of the defendant's disposition."); Rule 32(a) of the Hawaiʻi Rules of Penal Procedure (HRPP) (2006) ("Before suspending or imposing sentence, the court shall address the defendant personally and afford a fair opportunity to the defendant and defendant's counsel, if any, to make a statement and present any information in mitigation of punishment.").

We observe the trial court has an especially important role in affording the right to pre-sentence allocution to a defendant appearing pro se at sentencing. When a pro se defendant is not responsive to the court's request for allocution, the trial court may, as a matter of good judicial administration, seek confirmation that the defendant understands the right to address the court regarding sentencing before the sentence is imposed.[21]

## IV. CONCLUSION

Based on the foregoing, we vacate the ICA's December 23, 2013 Judgment on Appeal and the district court's August 29, 2011 Judgment of Conviction and Sentence and remand the case to the district court for resentencing.

| | |
|---|---|
| James S. Tabe<br>for petitioner | /s/ Mark E. Recktenwald |
| | /s/ Sabrina S. McKenna |
| Linda L. Walton<br>for respondent | /s/ Richard W. Pollack |



---

[21] We note that the record in this case does not disclose whether Phua received a copy of the PSI. When a defendant appears pro se at sentencing, the trial court should confirm the defendant received a copy of the PSI and had an opportunity to review it. HRS § 706-604(2) requires the trial courts to furnish the parties with a copy of the PSI and "afford fair opportunity" for the parties to "controvert or supplement" it. Thus, the court may verify that the PSI has been received by a counseled or uncounseled defendant, when it affords the parties the opportunity to correct or supplement the PSI.