**Electronically Filed
Intermediate Court of Appeals
CAAP-21-0000196
31-MAR-2022
07:51 AM
Dkt. 383 SO**

NO. CAAP-21-0000196

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

IN THE INTEREST OF SK CHILDREN

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-S NO. 18-00077)

<u>SUMMARY DISPOSITION ORDER</u>
(By:  Ginoza, Chief Judge, Leonard and McCullen, JJ.)

Appellant Mother (**Mother**), self-represented, appeals from the Order Terminating Parental Rights, filed on March 23, 2021, in the Family Court of the First Circuit (**Family Court**).[1]

Mother contends on appeal: (1) there are no grounds to terminate her parental rights in violation of her due process rights; (2) she was denied visits after termination of her parental rights; (3) jurisdiction was not established at the commencement of the case and the petition for temporary foster custody was based on misleading information; (4) she was not properly served until April 20, 2018, which violated her right to due process; (5) the statute of limitations expired because the order terminating her parental rights was made past the two year mark and the motion to terminate parental rights was made in the 24th month of foster care; (6) Petitioner-Appellee State of Hawaiʻi, Department of Human Services (**DHS**), abused its

---

[1]  The Honorable Jessi L.K. Hall presided.

discretion by "planning, carrying out and succeeding in defrauding the government, by using the [] family as eligible interest in the title iv incentive program[;]" (7) a felony was committed by DHS personnel by manipulating the court with misleading information of reports of abuse by Mother and arbitrarily detaining her for three years; and (8) default judgment should not be entered unless there is clear and convincing evidence to prove child abuse.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Mother's points of error as follows:

Mother does not challenge any of the Family Court's findings of fact (**FOF**) and unchallenged findings are binding on this court. In re Doe, 99 Hawaiʻi 522, 538, 57 P.3d 447, 463 (2002).

(1) The court construes Mother's first point of error as a claim that there was no clear and convincing evidence that Mother was not presently willing and able to provide a safe family home, even with the assistance of a service plan, and it was not reasonably foreseeable Mother would become willing and able to provide a safe family home, even with the assistance of a service plan, within a reasonable period of time not to exceed two years from the date the children first entered foster custody, pursuant to Hawaii Revised Statutes (**HRS**) § 587A-33(a)(1) and (2) (2018).

There was clear and convincing evidence Mother was not presently willing and able to provide a safe family home, even with the assistance of a service plan. Mother's current involvement with DHS was due to safety issues with illicit drug use and domestic violence in front of the children. FOF 76. Mother's main safety concerns involve mental instability, lack of demonstration of sobriety, family conflict, and threatening behavior towards DHS. FOF 76. Mother's failure to recognize the negative impact of her actions on others has become a serious

ongoing problem.  FOF 76.  Mother's recommended services were participation in a psychological evaluation, substance abuse assessment, random urinalysis, parenting education and domestic violence programs, and individual therapy.  FOF 77.  On April 18, August 19, and October 11, 2019, Mother failed to participate in a drug urinalysis, which are presumed to be positive.  FOF 83. Mother stated that she tested positive for barbiturates and opioids for at least four months in 2019 while on HOPE probation. FOF 84.  Despite requests by DHS, Mother has not taken a drug test since February 2020.  FOF 88.  Thus, Mother failed to participate in random drug urinalyses and demonstrate consistent and prolonged sobriety, continued to deny having any problems with substance abuse, and has gone to great lengths to contest and avoid substance abuse monitoring from the outset of the case. FOF 87.  Although Mother completed parenting and domestic violence programs, she continued to be involved in relationships that are dangerous and abusive.  FOF 91.  Erin Asato (**Asato**), a DHS social worker, testified that the same month Mother was discharged from a domestic violence program, she filed a temporary restraining order on her boyfriend and informed DHS she was involved with the police crime reduction unit.  FOF 115d. The Family Court found Asato to be a credible witness.  FOF 113. At the time of trial in March 2021, after DHS had provided Mother with a service plan, she did not resolve the safety issues initially identified by DHS nearly three years earlier in April 2018, which prevented Mother from providing a safe family home.

There was clear and convincing evidence it was not reasonably foreseeable Mother would become willing and able to provide a safe family home, even with the assistance of a service plan, within a reasonable period of time, not to exceed two years from the date the children first entered foster custody.  The children first entered foster custody on June 1, 2018.  FOF 66. As noted above, trial on the Motion to Terminate Parental Rights was conducted in March 2021, FOF 50, more than two years after the children first entered foster custody.  Asato testified

Mother would not benefit from additional services and could not provide a safe family home in the future.  FOF 115e and 115f. Dr. Cindy Ikeda (**Dr. Ikeda**), psychologist consultant for the Child and Family Service Multidisciplinary Team, testified it would not be beneficial for Mother to re-take parenting classes because the issue is that she cannot apply what she learned when she cannot admit her own shortcomings and Mother received the maximum benefit from domestic violence services and further participation will not make a difference.  FOF 127e and 127f. Dr. Ikeda also stated Mother could not provide a safe family home in the future.  FOF 127k.  The Family Court found Dr. Ikeda to be a credible witness.  FOF 126.  It was not reasonably foreseeable Mother would become willing and able to provide a safe family home within two years from the date the children first entered foster custody because she had not done so after more than two years and Mother would not be able to do so with further services.

(2) Mother claims she was denied visitation after termination of her parental rights.  After termination of parental rights, "[a] family member may be permitted visitation with the child at the discretion of the permanent custodian.  The court may review the exercise of such discretion and may order that a family member be permitted such visitation as is in the best interests of the child."  HRS § 587A-33(d).  Mother does not cite and this court cannot find where in the record Mother's request for visitation after termination of parental rights was denied by DHS, the permanent custodian, and that she asked the Family Court to review DHS's denial of visitation after termination of her parental rights.  Even if the Family Court denied such visitation, Mother provides no argument why it was erroneous to deny her visitation after termination of her parental rights.  Therefore, the point of error is waived. Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rule 28(b)(4) and (7).

(3) Mother's claim that the Family Court failed to establish jurisdiction and that the petition for temporary foster custody was based on misleading information is without merit. Mother stipulated to the Family Court's jurisdiction, adjudication of the petition for temporary foster custody, and award of foster custody to DHS at a hearing on July 2, 2018. FOF 23. Mother agreed that there was a reason for DHS and the Family Court to be involved with the family.

(4) Mother's due process rights were not violated when she was served with a summons on April 20, 2018, despite the fact a Petition for Temporary Foster Custody (**Petition**) was filed on April 5, 2018.

HRS § 587A-26(a) (2018) requires the Family Court to hold a hearing within two days, excluding Saturdays, Sundays, and holidays, after the filing of a petition for temporary foster custody. "After a petition has been filed, the court shall issue a summons requiring the presence of the parents and other persons to be parties to the proceeding except the child[.]" HRS § 587A-13(a) (2018). "Service shall be completed no less than twenty-four hours prior to the time set forth in the summons for a temporary foster custody hearing[.]" HRS § 587A-13(e).

A hearing was held on April 9, 2018, within two days, excluding Saturday and Sunday, of the April 5, 2018 filing of the petition. The hearing on temporary foster custody was continued to May 11, 2018, because neither parent had been served a summons. On April 20, 2018, Mother was served with a copy of a summons and certified copy of the Petition, Safe Family Home Report, and Service Plan. FOF 19. On May 11, 2018, Mother appeared with a court-appointed attorney for the temporary foster custody hearing but Father was not yet served so the hearing was continued to July 2, 2018. As noted above, Mother stipulated to jurisdiction and adjudication of the temporary foster custody petition on July 2, 2018. Father also stipulated to jurisdiction and adjudication of the temporary foster custody petition on July 2, 2018. FOF 23.

5

Although not raised as a specific point of error, but related to Mother's claim of a due process violation regarding the service of the Petition, this court requested additional briefing by the parties to address Mother's right to court-appointment counsel and the Family Court's effort to appoint Mother counsel in this case.

Due process requires the Family Court to "appoint counsel for indigent parents when DHS files a petition asserting custody over a child." In re L.I., 149 Hawaiʻi 118, 122-23, 482 P.3d 1079, 1083-84 (2021).  The failure to timely appoint counsel is structural error which does not require proof the error was harmful.  Id. at 123, 482 P.3d 1084.  In addition, discharging counsel during the pendency of the proceeding prior to a decision on a motion to terminate parental rights is a violation of due process and also structural error which also does not require proof the error was harmful.  In re J.M., 150 Hawaiʻi 125, 143, 497 P.3d 140, 158 (App. 2021).  Nonetheless, the right to counsel may be voluntarily and intelligently waived based on the totality of the circumstances.  In the Interest of Doe, 77 Hawaiʻi 46, 49, 881 P.2d 533, 536 (1994) (citing Medeiros v. State, 63 Haw. 162, 163, 623 P.2d 86, 87 (1981)) (minor may waive right to counsel in juvenile proceeding if done so voluntarily and intelligently).

Mother was timely appointed counsel when she made her first appearance in the proceeding with court-appointed counsel.[2] After several changes in court-appointed counsel at Mother's request, on October 20, 2020, Mother indicated she would like to represent herself.  The Family Court questioned Mother about her age, education, ability to understand English, whether she was currently under the influence of any drugs or alcohol, if she was receiving treatment for any mental illness or emotional disability, and her prior experience in participating,

---

[2]  A parent's first appearance in the proceeding is not necessarily the measure of timely appointment of counsel because a parent may want to retain counsel or must establish indigency and accept court-appointed counsel, neither of which is at issue in this case.

testifying, and representing herself in court.[3]  See State v. Phua, 135 Hawaiʻi 504, 513, 353 P.3d 1046, 1055 (2015) (the trial court should first explore the facts and circumstances pertaining to a defendant's level of comprehension such as age, education, English language skills, mental capacity, employment background, and prior experience with the criminal justice system, when a defendant seeks to waive the right to counsel in a criminal proceeding citing State v. Dickson, 4 Haw. App. 614, 619, 672 P.2d 1036, 1041 (1983)).  The Family Court then informed Mother that: if she did not understand anything to inform the court; the proceeding involved the possibility of termination of parental rights; the matter may be set for trial; DHS was required to prove Mother was unwilling or unable to provide a safe family home for her children and if DHS succeeded, her parental rights would be terminated; Mother had the right to be represented by an attorney; due to her financial circumstances Mother had been provided an attorney; and if Mother represented herself the court or judiciary employees cannot help her, and it would be presumed she knew and would follow the rules of evidence, court rules, and law.  The Family Court also informed Mother she could retain her own attorney.  The Family Court also explained that because Mother had no formal legal training, representing herself would be difficult because the proceedings are often complicated and legally technical, if she did not adequately represent herself she could not later complain she did not have effective legal representation, and recommended that Mother be represented by counsel.

The Family Court inquired whether Mother had any questions, to which she responded "No" and Mother affirmed she still wished to waive her right to counsel and represent herself and her decision was entirely voluntary.  The Family Court made

_____

[3]  As of September 25, 2020, DHS reported Mother was previously employed but was currently not employed.

an express finding that Mother voluntarily, intelligently, and knowingly waived her right to be represented by an attorney.

The record demonstrates Mother was informed of the disadvantages of self-representation, Phua, 135 Hawaiʻi at 515-16, 353 P.3d at 1057-58,[4] and she voluntarily, intelligently, and knowingly waived her right to counsel under the totality of the circumstances.  Therefore, Mother's due process rights were not violated.

(5) Contrary to Mother's claim, there is no statutory time limitation for the Family Court to issue an order terminating parental rights.

DHS must file a motion to terminate parental rights if, at a periodic review hearing "the child has been in foster care under the responsibility of the department for an aggregate of fifteen out of the most recent twenty-two months from the date of entry into foster care," or at a permanency hearing "the child has been in foster care under the responsibility of the department for a total of twelve consecutive months or an aggregate of fifteen out of the most recent twenty-two months from the date of entry into foster care," unless DHS "has documented in the safe family home factors or other written report submitted to the court a compelling reason why it is not in the best interest of the child to file a motion" or "has not provided to the family of the child, consistent with the time period required in the service plan, such services as the department deems necessary for the safe return of the child to the family home."  HRS §§ 587A-30(c) (2018) and 587A-31(g) (2018).  The children entered foster care on June 1, 2018.  FOF 66.  A Motion to Terminate Parental Rights was filed on June 17, 2020.  FOF 28.  Mother does not cite and this court cannot find where in the record Mother objected to DHS not filing a motion to terminate parental rights prior to June 17, 2020.  Mother also

---

[4]  Warning a parent about the elements of an offense, the pleas and defenses available, and the punishment which may be imposed, Phua, 135 Hawaiʻi at 515, 353 P.3d at 1057, are not applicable to the proceedings in this case.

provides no argument as to how a delay in filing a motion to terminate parental rights affected her.  Therefore, the point of error is waived.  HRAP Rule 28(b)(4) and (7).

(6) Mother claims DHS abused its discretion by "planning, carrying out and succeeding in defrauding the government, by using the [] family as eligible interest in the title iv incentive program."  It is unclear what Mother refers to as an "eligible interest in the title iv incentive program." Further, Mother does not cite and this court cannot find where in the record Mother objected to DHS's actions based on an "eligible interest in the title iv incentive program" and Mother does not provide any argument regarding this alleged point of error. Therefore, the point of error is waived.  HRAP Rule 28(b)(4) and (7).

(7)  Mother asserts criminal conduct by others in this proceeding, but she does not provide references to the record or cogent arguments to support her claims.  The Family Court found the DHS witnesses to be credible witnesses.  FOFs 113, 116, and 126.  We conclude this point raised by Mother is without merit.

(8) The Family Court did not terminate Mother's parental rights based on a default for failing to appear after one day of trial.  Mother was defaulted for failing to appear but DHS continued to present witness testimony after her non-appearance.  In terminating Mother's parental rights, the Family Court stated: "After full consideration of the record and evidence, testimony, and representations presented by the Court -- presented, the Court finds by clear and convincing evidence that neither parent is able to provide a safe family home even with the assistance of a service plan at this time or within a reasonable period of time."  As discussed above, there was clear and convincing evidence Mother was not willing and able to provide a safe family home, even with the assistance of a service plan, and that it was not reasonably foreseeable Mother would become willing and able to provide a safe family home, even with

the assistance of a service plan, within a reasonable period of time.

Therefore, IT IS HEREBY ORDERED that the Order Terminating Parental Rights, filed on March 23, 2021, in the Family Court of the First Circuit, is affirmed.

DATED:  Honolulu, Hawaiʻi, March 31, 2022.

On the briefs:                      /s/ Lisa M. Ginoza
                                    Chief Judge
Mother,
Self-represented Appellant          /s/ Katherine G. Leonard
                                    Associate Judge
Eric J. Alabanza
Julio C. Herrera,                   /s/ Sonja M.P. McCullen
Patrick A. Pascual,                 Associate Judge
Ian T. Tsuda,
Deputy Attorneys General,
for Petitioner-Appellee