**<u>NOT FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER</u>**

**Electronically Filed
Intermediate Court of Appeals
CAAP-18-0000083
08-NOV-2023
07:49 AM
Dkt. 216 MO**

NO. CAAP-18-0000083

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee,
v.
OLEG LEUS, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CASE NO. 1PC151001754)

**<u>MEMORANDUM OPINION</u>**
(By: Hiraoka, Presiding Judge, Wadsworth and Guidry, JJ.)

Defendant-Appellant Oleg Leus (**Leus**) appeals from the Judgment of Conviction and Probation Sentence, entered by the Circuit Court of the First Circuit on February 6, 2018.[1] Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised, we affirm.

---

[1] The Honorable Rom A. Trader presided.

## I.    Background

On November 4, 2015, the Plaintiff-Appellee State of Hawaiʻi (**State**) charged Leus by criminal indictment with Assault Against a Law Enforcement Officer in the First Degree, in violation of Hawaii Revised Statutes (**HRS**) §§ 707-712.5(1)(a) (2014) (Count 1), and Harassment, in violation of 711-1106(1)(a) (2014) (Count 2).  Following a trial, at which Leus was self-represented,[2] the jury found Leus guilty of the Count 1 included offense of Assault Against a Law Enforcement Officer in the Second Degree, and Harassment.  On February 6, 2018, the circuit court sentenced Leus to a one-year term of probation for Count 1, and a six-month term of probation for Count 2, with both terms to run concurrently.

Leus timely appealed.[3]  His opening brief raises seven points of error on appeal, each of which this court considers in turn.

---

[2]    Prior to trial, Leus was consecutively represented by four attorneys.  These attorneys withdrew in turn from representing Leus with the circuit court's approval.  Leus elected to represent himself at trial, with court-appointed counsel Walter J. Rodby (**Rodby**) appearing as standby counsel.

[3]    Leus is represented on appeal by William K. Li.

## II. Discussion

### A. Waiver of Counsel

Leus contends that his waiver of counsel "was insufficient because the trial court did not adequately advise him of the pleas and defenses available, the punishments that may be imposed, and that a disruption of the trial could lead to vacation of the right to self-representation." "When a defendant elects to proceed pro se, the record must indicate that the defendant was offered counsel, but he or she voluntarily, knowingly, and intelligently rejected the offer and waived that right." State v. Phua, 135 Hawai'i 504, 512, 353 P.3d 1046, 1054 (2015)(citation omitted). The waiver of counsel must be unequivocal, and voluntarily and freely made. Id. We review questions of constitutional law under the right/wrong standard. Id.

The Hawai'i appellate courts have adopted three "specific waiver inquiry" factors for courts to consider when determining whether the right to counsel was properly waived,

> (1) the particular facts and circumstances relating to the defendant that indicate the defendant's level of comprehension; (2) the defendant's awareness of the risks of self-representation; and (3) the defendant's awareness of the disadvantages of self-representation.

Phua, 135 Hawai'i at 512, 353 P.3d at 1054 (citing State v.

3

Dickson, 4 Haw.App. 614, 619-20, 673 P.2d 1036, 1041-42 (1983)). Upon review of the record, we conclude that all three Dickson factors were satisfied, and that Leus voluntarily, knowingly, and intelligently waived his right to counsel.

The first factor, "the particular facts and circumstances relating to the defendant that indicate the defendant's level of comprehension[,]" is established by the circuit court's inquiry into Leus's background, education, ability to understand English, and mental capacity. Phua, 135 Hawai‘i at 513, 353 P.3d at 1055 (recognizing "circumstances" pertaining to a defendant's "level of comprehension" as including "age, education, English language skills, mental capacity, employment background, and prior experience with the criminal justice system"). Leus testified, in response to the circuit court's questions, that he was fifty-seven years old at the time of trial, originally from Ukraine, and that he had "college and four years of university" studying "[b]uilding engineering" and architecture. Leus also testified that he had been living in the United States for twenty years, acknowledged

that he had the ability to understand and speak English, and

confirmed that he was "thinking clearly today."[4]

---

[4]     Leus, by his own choice, responded to the circuit court primarily in English.  The circuit court instructed Leus that he could utilize the assistance of the translator who had been provided for him as follows,

> All right.  First things first for you, Mr. Leus.  I know you understand a fair bit of English, and you have a tendency sometimes when we're in court to communicate and respond in English.  For purposes of our record, to make sure that we're clear about everything, the Court's going to instruct you to rely on Mr. Druker to translate any and all questions or matters that are occurring in court for you, and that if a response is required from you or you need to say something in response, then I'm going to ask that you allow Mr. Druker to translate for you.  Is that all right with you?[]
>
> You can be seated.
>
> MR. LEUS:  I inability to speak myself in some periods?
>
> THE COURT:  All right.  So let me ask you this.  It sounds like what you're about to say -- and you can correct me if I'm wrong -- is that if you're comfortable responding in English, you would rather do that, is that correct, and then only use Mr. Druker when you're not, when you need his assistance to understand what you're hearing and also to respond.  Is that what you would prefer?
>
> MR. LEUS:  Yes, partially, yes, yes.
>
> THE COURT:  Okay.  All right.  So in order to make sure that we're able to get everything down on the record, it's going to be very important that we wait for the question or comment to be stated, and then if you feel comfortable, then please respond.  If not, then indicate to Mr. Druker, and he will translate for you and then your response, okay.  Alls [sic] I'm saying is that we need to go very sort of deliberately about this to make sure that we get an accurate record.  Do you understand, Mr. Leus?
>
> MR. LEUS:  (Through the interpreter)  So does this mean that I have no right to speak at all or only --
>
> THE COURT:  No, not at all, Mr. Leus.  Alls [sic] I'm saying is that because we have Mr. Druker's assistance, generally my suggestion to people is that to make sure that they understand everything and are able to communicate

(continued . . .)

The record reflects that the circuit court also satisfied the second and third Dickson factors — namely, "the defendant's awareness of the risks of self-representation," and "defendant's awareness of the disadvantages of self-representation." Phua, 135 Hawai‘i at 514, 353 P.3d at 1056 ("The record must reflect that the defendant understands what he

---

[4](. . .continued) everything, that the services of the interpreter be used. If you would rather communicate in times when you're able to understand what's being said and then respond in English, you're free to do that. Is that all right?

MR. LEUS: Yes, absolutely.

At the end of the colloquy, the circuit court further instructed Leus,

THE COURT: Okay. And you've had Mr. Druker I think help you once or twice. Do you feel like you're able to understand what the Court was talking to you about?

MR. LEUS: Absolutely.

THE COURT: Have you felt like you could explain yourself or speak for yourself?

MR. LEUS: Yes.

THE COURT: And where you needed help, I think at least once, you looked to Mr. Druker, and he translated for you and then explained to the Court your answer, yes?

MR. LEUS: Yes.

THE COURT: So if we go ahead and proceed with you representing yourself, Mr. Druker will be here to help you. It's very important you know that he is here to assist you. Do you understand?

MR. LEUS: Yes.

or she is doing and that the decision is made with eyes open.")(cleaned up).

Leus was informed of the risks of self-representation through the following colloquy,

>    THE COURT: And have you ever been charged with a felony offense before? I don't think so, correct?
>
>    MR. LEUS: Never. Never.
>
>    THE COURT: All right. And so I need to make sure that you're clear that because of the charge in Count 1 against you, you have a right to an attorney to assist you. You know that, correct?
>
>    MR. LEUS: Yes.
>
>    . . . .
>
>    THE COURT: Have you ever had to go to court being charged with any sort of offense ever in the United States?
>
>    MR. LEUS: Never I was, judge.
>
>    THE COURT: Okay. Very good.
>
>    Now, you have decided you want to represent yourself, correct?
>
>    MR. LEUS: Yes.
>
>    THE COURT: And today, to help you, as he has for some time, is Mr. Rodby, correct?
>
>    MR. LEUS: Yes.
>
>    THE COURT: And so he is here to not represent you but simply to be a --
>
>    MR. LEUS: Consultant.
>
>    THE COURT: -- a consultant or really just a reference for information for you. His job is not to essentially give you advice about what you should do. That's your choice. You understand that?
>
>    MR. LEUS: Yes.

7

THE COURT: Okay. Now, I just want to make sure that you understand that representing yourself is a very serious decision. You understand?

MR. LEUS: Yes.

THE COURT: Okay. And so I'm going to talk to you about some rights that you have just to make sure that our record is clear, okay?

MR. LEUS: Yeah.

THE COURT: All right. You understand that today you're about to start trial before a jury in this case?

MR. LEUS: Yes.

THE COURT: And that you're facing two charges, yes?

MR. LEUS: Yes.

THE COURT: One is Assault Against a Law Enforcement Officer in the First Degree, which is a serious felony; you understand?

MR. LEUS: Yes.

THE COURT: The other is a Harassment charge, which is a petty misdemeanor; do you understand?

MR. LEUS: Yes.

THE COURT: All right. Both of these are crimes; do you understand that?

MR. LEUS: Yes.

THE COURT: And you understand that the State is going to be required to prove all of the requirements necessary for each one of these charges; do you understand?

MR. LEUS: Yes.

THE COURT: And that each charge requires the State to prove beyond a reasonable doubt all of the elements of those offenses; do you understand?

MR. LEUS: Absolutely.

THE COURT: And elements are like ingredients in a recipe that ends up being a crime; do you understand?

MR. LEUS: Yes.

THE COURT: Okay. And that in this particular case, the State has to prove in Count 1 that you intentionally or knowingly caused bodily injury to Masakazu Kurita, who was a police officer; do you understand?

MR. LEUS: Yes.

THE COURT: And that at that time, that that person was a police officer that was on duty doing his job; do you understand?

MR. LEUS: Yes.

THE COURT: And that the date that's charged where they're saying you did something to assault this officer is October 5, 2015; do you understand?

MR. LEUS: Yes.

THE COURT: Okay. As to the second count, on that same day, the State would have to prove that you had the intent or purpose to harass, annoy, or alarm a person by the name of Jesse Takushi; do you understand?

MR. LEUS: Yes.

THE COURT: And that they would have to prove that you either struck, hit, shoved, or kicked or touched that person in an offensive manner, in other words, in a way that they found offensive; do you understand?

MR. LEUS: Yes.

THE COURT: And that it requires proof of physical contact; do you understand?

MR. LEUS: Yes.

THE COURT: Okay. And you understand the State has to prove those things to the highest standards of our law, which is proof beyond a reasonable doubt; do you understand that?

MR. LEUS: Yes.

THE COURT: Okay. Do you have any questions about what those elements or what those crimes are about?

MR. LEUS: No.

THE COURT: Very good. You understand that if the State does not prove all of those elements or requirements for each offense, then you cannot be found guilty of anything, yes?

MR. LEUS:  Yes.

THE COURT:  And the State has to prove every single one of those, right?

MR. LEUS:  Yes, without doubt.

THE COURT:  Okay.  Very good.  And that proof beyond a reasonable doubt means that you are presumed innocent of these charges; you know that, correct?

MR. LEUS:  Absolutely.

THE COURT:  And that remains with you unless the State brings in proof, evidence, witnesses to prove those elements; do you understand?

MR. LEUS:  Yes.

THE COURT:  And they have to satisfy the jury that they've proven it to the highest level of our legal system, proof beyond a reasonable doubt; do you understand that?

MR. LEUS:  Yes.

THE COURT:  Now, reasonable doubt is a doubt in a person's mind about your guilt which arises from the evidence presented or the lack of evidence; do you understand that?

MR. LEUS:  Yes.

THE COURT:  And that it has to be a doubt that's based upon reason and common sense; do you understand?

MR. LEUS:  Yes.

THE COURT:  And that means you cannot be found guilty -- even if they think you're probably guilty, that's not enough; do you understand?

MR. LEUS:  Yes.

THE COURT:  And that even if they have a strong suspicion or think you did these crimes, that's not enough to convict you; do you understand?

MR. LEUS:  Yes.

THE COURT:  Very good.  Now, do you have any questions about what the term "proof beyond a reasonable doubt" means?  No?

MR. LEUS:  I understand this.

THE COURT:  Okay.  Very good.

All right.  You understand that if you are found guilty of the first charge -- and I believe that is a -- is that a Class B?

MR. SOUSIE:  I believe it's a C, Your Honor.

THE COURT:  -- C, that's punishable by up to five years in prison and/or a $10,000 fine for the first count, yes?

MR. LEUS:  Yes.

THE COURT:  And the second offense, Harassment, is punishable by up to 30 days in jail and/or a -- I believe it's a thousand-dollar fine.  You understand, Mr. Leus?

MR. LEUS:  Yes.

THE COURT:  Now, if you are convicted, it does not mean that those maximum penalties will be imposed; do you understand?

MR. LEUS:  Yes.

THE COURT:  But each one of those carries with it the possibility of court supervision; do you understand?

MR. LEUS:  Yes.

THE COURT:  And that could be for a period of as much as four years for the first charge; do you understand?

MR. LEUS:  Yes.

THE COURT:  That you have to do certain things that the Court requires you to do; do you understand?

MR. LEUS:  Yes.

THE COURT:  Very good.

Now, you understand that because of the consequences that these offenses carry, that you have an absolute right under our law, our constitutions, both the United States and Hawaii, to have an attorney represent you; you understand?

MR. LEUS:  Yes.

As our case law establishes, "the trial court is not required to give the defendant a short course in criminal law and procedure," but the defendant must be sufficiently informed of the risks of self-representation in the context of the offenses for which he was being charged. Phua, 135 Hawaiʻi at 514-15, 353 P.3d at 1056-57 (cleaned up). The record reflects that Leus, through the extensive colloquy set forth above, was informed of "the nature of the charge, the elements of the offense, the pleas and defenses available, the punishments which may be imposed, and all other facts essential to a broad understanding of the whole matter." Id. at 515, 353 P.3d at 1057 (citations and internal quotation marks omitted). The information was not "mechanically provide[d]," but meant to "engage the defendant to ensure that the waiver [was] intelligently and voluntarily made." Id. at 514, 353 P.3d at 1056.

Leus was also informed several times of the *disadvantages* of self-representation, including his right to the assistance of counsel,

> THE COURT: What I am telling you is the reason why I'm going through all this, Mr. Leus, what you're doing, you have a right to represent yourself if that's what you want.
>
> MR. LEUS: Yes.

12

THE COURT: But the Court does not recommend that, and I told you several times I don't think it's a good idea. Do you understand?

MR. LEUS: Absolutely.

THE COURT: But that's your choice.

MR. LEUS: Yes.

THE COURT: And if that's what you want to do, the Court will allow you to represent yourself. Do you understand?

MR. LEUS: Yes.

THE COURT: But make no mistake that Mr. Rodby, while he's there to provide information, he is not your lawyer, meaning that he is not here to represent you in this case.

MR. LEUS: Absolutely understand this.

THE COURT: Okay.

. . . .

Now, you understand that if you represent yourself, I, as the judge, the Court cannot help you at all; do you understand?

MR. LEUS: Yes.

THE COURT: Because my job is not to favor either side. I am just like a referee or umpire. You understand that?

MR. LEUS: Absolutely.

THE COURT: Very good.

And if you represent yourself, Mr. Leus, you understand that you are going to be required to follow all of the rules of court.

MR. LEUS: Yes.

THE COURT: And that would be for rules of procedure, how to do certain things, as well as the substantive law like, for example, the rules of evidence, things like that. Do you understand?

MR. LEUS: Yes.

13

THE COURT:  Now, you can ask Mr. Rodby about those, but it's going to be your responsibility to make sure you follow those.  Do you understand?

MR. LEUS:  Yes.

THE COURT:  All right.  Very good.

And at trial, things sometimes can get a little bit complicated, not always, but sometimes they can, and it can be -- technically, there are some issues that can come up that are not even easy for lawyers and the Court to deal with.  Do you understand?

MR. LEUS:  Yes.  Psychology.

THE COURT:  Pardon me?

THE INTEPRETER:  Psychology.

MR. LEUS:  Psychology of people.  I understand what you talking about.

THE COURT:  All right.  Now, you do not have any formal training in the law, correct?

MR. LEUS:  No, but I'm, I have interest about law, about --

THE COURT:  No, and that's fine.  I'm not saying just because you don't have any legal training, that you're not someone who can represent themselves; I'm not saying that.  It's just that you're an engineer by education, yes?

MR. LEUS:  Yes.

THE COURT:  So if I were to go out and try to do something that involves --

MR. LEUS:  To build house, for example.

THE COURT:  Correct.  I probably would not be doing a very good job, so -- but for you, because you don't have any legal training, it doesn't mean that you cannot learn and that you haven't studied, but you are going to be on the other side from Mr. Sousie who is legally trained and experienced.  Do you understand?

MR. LEUS:  Yes.

THE COURT:  Okay.  And that even for the best of people, this can be very, very difficult and challenging, you understand, to represent yourself; do you understand?

14

MR. LEUS: Absolutely.

THE COURT: All right. And if you decide that you want to confirm you want to continue to represent yourself, the Court will let you do that, but you cannot later on, let's say, complain that you did not have a lawyer because that is your choice to make, okay. Do you understand that, Mr. Leus?

MR. LEUS: Absolutely.

THE COURT: And basically, as I have a couple different times previously encouraged you to strongly consider allowing a lawyer to represent you, all right. It's your choice, like I said, but it's always better, I think, to have someone who is properly trained and experienced. Do you understand?

MR. LEUS: Yes.

THE COURT: Okay. But you still wish to represent yourself, Mr. Leus?

MR. LEUS: Yes.

THE COURT: All right. Very good.

Now, instead of having the Court pay for a lawyer to represent you, if you wanted to and you could afford it, you could go out and hire your own lawyer, whoever he or she is, to come in and represent you; do you understand?

MR. LEUS: Yeah.

THE COURT: Okay. And I presume but I just want to be clear, you do not wish to do that, right?

MR. LEUS: I don't have money.

THE COURT: Okay. And like I said before, if you don't have the money to pay for a lawyer, the Court would pay for a lawyer like Mr. Rodby to represent you if that's what you wish; do you understand?

MR. LEUS: Yes.

The Court: All right. Now, do you have any questions about what I've talked to you about, Mr. Leus?

MR. LEUS: No.

THE COURT: And you're obviously a very intelligent person, and you've thought a lot about this decision, I imagine, right?

15

MR. LEUS: Yes.

THE COURT: Are you comfortable with your decision to represent yourself?

MR. LEUS: Yes.

THE COURT: Okay. Do you have any questions about anything that I have talked to you about?

MR. LEUS: No.

THE COURT: And the decision that you've made to represent yourself, whose choice is that?

MR. LEUS: This is my choice.

THE COURT: Your choice. Okay. All right.

Leus acknowledged, throughout the colloquy, that he understood his right to be represented by an attorney, that it was his choice to represent himself, and that he was comfortable with his decision to represent himself.

We conclude that the circuit court properly assessed Leus's background and comprehension, and informed Leus of the risks and disadvantages of self-representation. The record reflects that Leus's decision to proceed self-represented was knowingly, voluntarily, and intelligently made.

B. **Alleged Prior Inconsistent Statement**

Leus contends that the circuit court erred "by precluding Leus from entering [testifying witness] [John] Hufana's (**Hufana**) prior inconsistent statement into evidence." At trial, Leus requested that the circuit court admit into

16

evidence Defendant's Exhibit 4U (**Exhibit 4U**), a recording,

during his direct examination of Hufana[5] and pursuant to Hawaii

Rules of Evidence (**HRE**) Rules 613 and 802.1,[6] for the purpose of

introducing Hufana's allegedly inconsistent statement.  The

State objected to the admission of Exhibit 4U on grounds that a

proper foundation for admission of the exhibit had not been

established; the circuit court sustained the objection, and

denied the admission of the exhibit.

We review the circuit court's denial of Exhibit 4U for

abuse of discretion.  "When a question arises regarding the

necessary foundation for the introduction of evidence, the

determination of whether proper foundation has been established

lies within the discretion of the trial court, and its

determination will not be overturned absent a showing of clear

---

[5]      Hufana was called as a witness by both the State and Leus.
Leus's attempt to introduce Exhibit 4U into evidence, as a prior inconsistent
statement, occurred during his direct examination of Hufana on December 7,
2017.  Hufana had previously been called by the State to testify on
December 6, 2017.

[6]      HRE Rule 613(b) instructs, in pertinent part,

        Extrinsic evidence of a prior inconsistent statement by a
        witness is not admissible unless, on direct or cross-
        examination, (1) the circumstances of the statement have
        been brought to the attention of the witness, and (2) the
        witness has been asked whether the witness made the
        statement.

HRE Rule 613.  HRE Rule 802.1 recognizes an inconsistent statement as an
exception to the hearsay rule when, among other things, "the statement is
offered in compliance with rule 613(b)[.]"  HRE Rule 802.1

abuse." State v. Eid, 126 Hawaiʻi 430, 440, 272 P.3d 1197, 1207

(2012) (quoting State v. Assaye, 121 Hawaiʻi 204, 210, 216 P.3d

1227, 1233 (2009)).

Here, we conclude that the circuit court did not err.

At trial, Leus attempted to introduce Exhibit 4U as follows,

> Q. (By Mr. Leus)  John [Hufana], do you remember we were talking about this case, and everything is recorded, and we was talking about that.  You was talking with me, with Bogden.  It was good night, absolutely calm, speech good, bring good refrigerator, new one, beautiful.
>
> THE COURT:  All right.  Mr. Leus --
>
> MR. LEUS:  Yeah, and --
>
> THE COURT:  No.  Ask a question.
>
> Q. (By Mr. Leus)  Yeah, and question is in this conversation when we were speaking about police brutality, all this stuff, did you say that, Oleg, everything recorded?
>
> MR. SOUSIE:  Objection.  Leading.
>
> THE COURT:  All right.  I'll overruled [sic] that. Go ahead.  Do you understand the question?
>
> THE WITNESS:  Yes, I understand the question.
>
> MR. LEUS:  I'm not finished.
>
> THE COURT:  No.
>
> MR. LEUS:  Ah. Okay.
>
> THE COURT:  Give the witness an opportunity.
>
> Go ahead.
>
> A. Being you guys started off the conversation with, you know, you guys wanted me to be your witness and so did the State, I wasn't sure where to go, but you guys wanted me to say some things that wasn't true, so being that said, I told you guys, Eh, the thing might be recorded, could have been recorded, and I don't want to be in trouble for that, so that's why I said it could have been recorded and

18

I don't want to get caught, because you guys wanted me to say things that never happened that night.

Q. (By Mr. Leus) Okay, John. What things that never happened we were asking to say?

A. That you weren't -- that you weren't resisting, that you were calm, you were doing what they were saying what they said you should do. There was a lot of things that you told me to say, you and your son. Everywhere at my apartment building, every chance you guys get, you guys bring that up. That day that we had that conversation, we even got into an argument. I told you guys I didn't want to talk to you, I didn't want to talk about this, and, yeah, it turned out that I told you it might be recorded and I don't want to talk about it.

Q. Okay. Understand we were talking. I'm not hear what you talking. Then why I'm asking. People will think this is against myself, but I will exactly asking, please, I remind, what exactly you want -- what exactly I was asking you to change, to change, what exactly? You can speak absolutely freely. Don't care about --

A. I'm not --

Q. Exactly.

A. Not to mention you asked me not to talk about not seeing things. Like, if I saw you guys by the car, what happened at the car, you said, Did you really see this, did you really see that, and I said, yeah, I saw this, and you said, well, you know, that's not going to – you said stuff that --

Q. No, exactly, exactly because --

A. This conversation is long ago, but out of the conversation, all I was trying to do that night was get you so that you're not taking me as a witness because everything I saw you do goes against what you was trying to tell me to say.

Q. Okay. What I say exactly, you cannot remember what I was asking you to talk in your testimony. It's okay, it's okay. It's whatever. **We recorded this conversation, and in this conversation, you talking that for sure, policemen showed you video even from two cameras, and Bogden asked, Are you sure, did you see this movie? Yes, you answered, I see this movie.**

MR. SOUSIE: **Objection.**

Q. What do you see on --

19

THE COURT:  Hold on a second.

Q.  Is --

THE COURT:  Hold on.

Q.  Did you see any --

THE COURT:  No.  Wait a minute.

**Sustained.**

**Please just ask a question.**

Q.  (By Mr. Leus) **Did you see any police movie?**

A.  **I did not see any videos.**

MR. LEUS:  Okay.  I need consultation.

THE COURT:  Please.

(Mr. Leus conferred with Mr. Rodby.)

MR. LEUS:  Your Honor, because what is recorded here absolutely different what John said --

THE COURT:  No, no, no, don't make a statement.  Do you have a request to make?

MR. LEUS:  I want -- I finish this conversation with John.

THE COURT:  Hold on, please.  You have something you'd like to request, is that right, regarding your exhibits?

MR. LEUS:  I want to request to listen this disk.

THE COURT:  And the designation is Defendant's 4U; is that correct?

MR. LEUS:  Yes, this 4U.

THE COURT:  Okay, I understand.  You're making that offer at this time.

MR. LEUS:  I was doing this --

THE COURT:  No, I don't want further discussion.  **You're offering Defendant's 4U.**

**Mr. Sousie, your response?**

20

>     MR. SOUSIE:  **Your Honor, the State objects on foundation.**
>
>     THE COURT:  **The objection is sustained.  The exhibit is refused.**[7]

(Emphasis added.)

As the record reflects, Leus did not bring the "circumstances of the statement" to the attention of Hufana, or establish whether Hufana "made the statement," as required pursuant to HRE Rule 613(b).  State v. Kassebeer, 118 Hawaiʻi 493, 516, 193 P.3d 409, 432 (2008) ("In order to lay the foundation to introduce a prior inconsistent statement, HRE Rule 613(b) require[s] that [the introducer] bring the circumstances of the statement to the [testifying witness's] attention and ask [witness] whether [witness] made the statement.")  While Leus referenced a "recording" and "police movie" during his questioning of Hufana, he did not establish that Hufana made any statement recorded on Exhibit 4U, or that Hufana made a statement to the police.  The circuit court did not abuse its discretion by sustaining the State's objection to the admission of Exhibit 4U for lack of foundation.

---

[7]     Following a brief bench conference, Leus again attempted to have Exhibit 4U entered into evidence, through the assistance of standby counsel Rodby.  Rodby addressed the circuit court as follows, "Mr. Leus has asked me to say that the exhibit should be admitted into evidence as a prior inconsistent statement."  The State objected, and the circuit court sustained the objection, noting that, "the Court did construe the prior offers under 613, and the Court will restate its prior ruling, which is to sustain the State's objection, refuse the exhibit, 4U."

C.    Requested Continuance

Leus contends that the circuit court abused its discretion in denying his request, made midway through the trial, for a "continuance to secure his medical witnesses."  We review for abuse of discretion.  Sapp v. Wong, 62 Haw. 34, 41, 609 P.2d 137, 142 (1980).

As Leus acknowledges, the circuit court considers two factors with regard to a motion for continuance, "(1) whether counsel exercised due diligence in seeking to obtain the attendance of the witness; and (2) whether the witness provides relevant and material testimony that benefits the defendant." State v. Williander, 142 Hawai'i 155, 163-64, 415 P.3d 897, 905-06 (2018).  Applying these two factors, we conclude that the circuit court did not abuse its discretion in denying the continuance that Leus requested.

As to the first factor, Leus fails to establish that he exercised due diligence in order to obtain the necessary witnesses for trial.  At the time Leus requested a mid-trial continuance, his case had been pending for two years.  Trial had commenced, and the circuit court noted that,

> This case was initiated soon after your arrest, which was
> on October 5, 2015.  There have been I believe one, two,
> three, four prior attorneys of record.  Mr. Rodby was
> appointed as standby counsel only.  You have been acting as
> your own attorney since at least, at least April of this
> year, and it is now December, which is approximately seven

22

or eight months after you took over representation of yourself in this case.

The circuit court, in denying the request, took note of Leus's self-representation and non-legal background. The circuit court, however, also explained that,

> [W]hat I am doing is holding you essentially to the same standards and requirements of anyone else that appears in court, including attorneys and those individuals such as yourself that choose to represent yourself. As I told you as recently as Monday of this week, that trial proceedings can be complicated, and it is entirely your responsibility to be aware of all of the rules and all the legal requirements, and that the Court is not here to assist you, all right.

The record supports the circuit court's determination that Leus did not exercise due diligence in subpoenaing his medical witnesses.

With regard to the second factor, the circuit court did not err in concluding that Leus failed to demonstrate that the witnesses would have provided relevant and material evidence. At trial, Leus informed the circuit court that he needed a continuance to subpoena the medical witnesses "because you said we need doctor to receive this papers[.]" The record does not support that the medical witnesses Leus sought to subpoena would have testified as custodians of Leus's medical records, and/or that they would have provided testimony as to any injuries that Leus sustained. Indeed, Leus did not establish that the medical witnesses he sought to subpoena had

23

examined him or that they had personal knowledge of his alleged injuries. The circuit court did not err in determining that Leus had not established that the medical witnesses' testimony was relevant and material.

The circuit court did not err in denying Leus's request to continue trial.

**D.   Questions Related to a Witness's Alleged Bias, Interest, or Motive to Testify Falsely**

Leus contends that "the trial court erred in precluding Leus from confronting Hufana on a matter directly related to Hufana's bias, interest, or motive to testify falsely." Leus specifically contends that the circuit court erred in "limiting" Leus's questions with regard to Leus's attempt "to adduce evidence that Hufana was jealous of his interaction with [Leus's neighbor] Jessica."

Pursuant to HRE Rule 609.1, "[t]he credibility of a witness may be attacked by evidence of bias, interest, or motive." "The trial court's determination that the proffered evidence is probative of bias, interest or motive is reviewed under the right/wrong standard." State v. Balisbisana, 83 Hawaiʻi 109, 114, 924 P.2d 1215, 1220 (1996) (citations omitted).

From what we are able to discern, Leus contends that the circuit court erred in sustaining the State's objection to

24

Leus's question to Hufana regarding Jessica's appearance.

Leus's question, the State's objection, and the circuit court's ruling are reflected in the record as follows,

> Q. (By Mr. Leus) How you can describe Jessica?
>
> A. Jessica?
>
> MR. SOUSIE: Objection.
>
> THE COURT: Overruled.
>
> A. Jessica, she's my neighbor. She's been my neighbor long before you guys moved in. Four years, for the four years that she's lived there, they've always, police have always been called upon them because they drink a lot and they get really loud. Sometimes I drink with them because they're the neighbors and I like to make the relationship because they watch the apartment sometimes because they're always there.
>
> Q. My question is like person, person, personality.
>
> A. Her personality?
>
> Q. Yeah, her personality.
>
> A. She's very forgetful. She's a really bad alcoholic. At that time, she was going through depression because of the loss of her baby. You remember that one. She's a really good girl. She graduated with -- in philosophy --
>
> Q. Psychology.
>
> A. -- psychology, and, you know, she's nice to my kids, so the relationship is good with her.
>
> Q. **What about her appearance?**
>
> MR. SOUSIE: **Objection.**
>
> Q. **Her appearance?**
>
> THE COURT: **Hold on. Hold on.**
>
> Q. **(By Mr. Leus) What about her appearance?**

25

> **THE COURT: Hold on, Mr. Leus. When there's an objection, you need to stop, okay.**
>
> **So I'll sustain the objection.**

(Emphasis added.)

At that time, the circuit court called a brief recess and held a bench conference. The State objected to Leus's line of questioning on grounds of relevance, and the circuit court gave Leus the opportunity to respond. The following discussion took place outside the presence of the jury,

> MR. LEUS: I have two responses. First response, that I'm not very convenient because I start to continue with him and Mr. Sousie asked about consultation with his client. What will be right now, he understand what I'm going, what I'm going, because what I was talking about about jealousy on John, this only was the reason why he call police on me, and right now he prepared, he prepared to speak with him, pay attention what Oleg doing right now, because I am asking so provocative questions that this questions looks like, in his eyes, looks like against me, and he is -- and right now he can speak exactly. After break, after work, this Mr. Sousie, he'll speak absolutely different.
>
> THE COURT: Hold on a second, Mr. Leus. **You are entitled to ask your questions of this witness that relate to what happened that night.** There have been several objections raised, many of which I have agreed with, and in part because your questions, sometimes it's difficult to know what exactly it is that you're ultimately asking, so what I would suggest to you -- and it's up to you -- is if you can try to make your questions very short and clear, that will help everybody, all right.
>
> MR. LEUS: I will try.
>
> THE COURT: But I would also tell you that if you ask questions that call for answers that go beyond what may have happened that night or get into other --
>
> MR. LEUS: Speculation.
>
> THE COURT: Well, speculation is one thing, but **what I'm concerned about is the jurors are not asked to decide this case based upon the characteristic of the people**

> **involved. It doesn't matter.** They simply need to understand what the information is about what happened or didn't, and the law is pretty clear that character evidence is extremely limited, so I just mention that to you. I'm not telling you what to do, but you need to be aware that you could ask questions that call for responses that could result in testimony that may not be helpful for this jury to know, okay.

(Emphasis added.)

The circuit court was not wrong in determining that Leus's question regarding Jessica's physical appearance was not relevant or probative of bias, interest, or motive. Leus was not foreclosed the opportunity to ask other questions that could potentially establish bias.[8] The record reflects that the circuit court, by sustaining the State's objection to Leus's question regarding Jessica's physical appearance, was not improperly interfering with Leus's constitutional right to examine his witness.

## E.   Allegation of Judicial Misconduct

Leus contends that the circuit court "prejudicially deprived Leus of his right to a fair trial when it warned him,

---

[8]    Specifically, the circuit court did not, as Leus asserts, tell him that "he was <u>only</u> 'entitled to ask questions of this witness that relate to what happened that night.'" (Emphasis added.) But even assuming the court erred in telling Leus he was entitled to ask questions of Hufana that relate to what happened that night, any such error was harmless beyond a reasonable doubt. Hufana testified that he did not see the incidents supporting either charge against Leus. Thus, the convictions did not rest on Hufana's testimony. Rather, the convictions were overwhelmingly supported by the testimony of the three officers who witnessed the incidents and said they saw Leus commit both offenses. <u>See</u> <u>infra</u> Section G.

in the presence of the jury, against any further outbursts and should have *sua sponte* declared a mistrial."  In reviewing allegations of judicial misconduct, "[t]he question is whether the trial judge's conduct 'reveal[s] a deep and thorough-going bias against and contempt for the appellants' legal representation' that is 'fundamentally at odds with his [or her] judicial responsibilities.'"  State v. Fukusaku, 85 Hawai'i 462, 482, 946 P.2d 32, 52 (1997).

Here, the record reflects a series of events at trial relating to Leus's attempt to introduce Exhibit 4U.  The following proceedings occurred outside the presence of the jurors,

> Mr. Leus, I have told you many times -- no -- I have told you many times not to make statements to the jury. You have on several occasions disregarded that.  I have simply viewed that as an inadvertent decision on your part each and every one of those times because you are certainly entitled to zealously represent yourself, but I am at the point where I have good reason to believe that you are intentionally doing this, Mr. Leus, in an attempt to communicate your own personal views to the jury[.]
>
> . . . .
>
> **When we were at the bench, I asked you at least two times to please lower your voice, and you refused.  When I made a statement dealing with the exhibit, I believe, you turned to the jury with your arms raised and made some sort of statement as if you disagreed.  You're entitled to have your opinions.  You are not entitled to do whatever you wish in this courtroom.  There are rules.  There are procedures.  We have to follow them.**
>
> MR. LEUS:  And he can steal this evidence?  That the rules, he can steal part of evidence?

THE COURT: All right.

MR. LEUS: And you talking everything okay?

THE COURT: You, as your own lawyer, are responsible for your own exhibits. Defendant's Exhibit [4]U was offered and refused yesterday. I respect the fact you disagree. That's fine. I asked Mr. Sousie on the record whether or not he had your exhibit.

And again, for the record, Mr. Sousie, do you have that exhibit?

MR. SOUSIE: No, Your Honor, the State does not.

THE COURT: All right.

MR. LEUS: He is liar, primitive liar, primitive, very primitive liar. Here, I have witness. He was, he was, and my son was, and to my son, I said, Oleg -- Bogden, it's here, I giving here this to him, and I told him, Everything okay, should we sign something? No. No, it's okay. Same in my hands. Okay. And I told him here is witness is here. Oh, it's okay, it's okay, everything okay. Now he talking part of number 4, everything that in your table, number 4, the documents you received, yeah, he has, he has, but this, he don't have, this video of the recording.

. . . .

THE COURT: And Mr. Leus, **I'm going to caution you, warn you, advise you, not to make further outbursts in front of the jury.** This does not help this process, all right, and I'm explicitly telling you not to do that, and if you do, Mr. Leus, you need to be very, very clear that there are possible consequences to your choice to disregard the Court's instruction. I do not want that to happen.

MR. LEUS: I have --

THE COURT: No, no, no.

And what we will do is we'll bring the jurors back in, we'll bring in Mr. Hufana. If you have other questions for him, you may ask those questions. If you have anything else with regard to your exhibit, that is your responsibility, all right.

. . . .

THE COURT: All right. Mr. Leus, what we will do is we will attempt to proceed in an orderly and a respectful

manner.  If you have any further outbursts, I will take a recess all right.

(Emphasis added.)

After the jury was brought back into the courtroom, and court was reconvened, the circuit court stated,

Mr. Leus, further Direct Examination.  I will just simply remind you that you may ask questions.  Please don't make statements, and there will be no further outbursts by you, all right.

Proceed, please.

And before we resume, ladies and gentlemen, to the extent that there were certain statements or, as the Court has characterized it, outbursts by Mr. Leus, you will disregard those, okay.  You'll not consider them in any way when you deliberate this case, all right.  Thank you.

Upon careful examination of the record, we conclude that the circuit court's above statements to Leus, including his reference to Leus's "outbursts" in the presence of the jury, were intended to maintain order and decorum during the trial proceedings.  They did not reflect any "deep and thorough-going bias against and contempt for" Leus, nor were they "fundamentally at odds" with the circuit court's judicial responsibilities.[9]  As such, they did not constitute judicial

---

[9]     The circuit court also later instructed the jury as follows,

If I have said or done anything that has suggested to you that I favor either side or if any of my statements or facial expressions has seemed to indicate an opinion as to which witnesses are or are not worthy of belief, what facts are or are not proved, or what inferences should be drawn from the evidence, I instruct you to disregard it.  You must also disregard any remark I may have made unless the remark was an instruction to you.

(continued . . .)

misconduct.  The circuit court did not err by not *sua sponte*
granting a mistrial.

## F.    Motion to Strike Jury Pool

Leus contends that "the trial court abused its
discretion in denying Leus's motion to strike the jury pool
where it was unduly composed of persons related to or close
friends with law enforcement."

> In order to establish a prima facie violation of the fair-
> cross-section requirement, the defendant must show (1) that
> the group alleged to be excluded is a "distinctive" group
> in the community; (2) that the representation of this group
> in venires from which juries are selected is not fair and
> reasonable in relation to the number of such persons in the
> community; and (3) that this underrepresentation is due to
> systematic exclusion of the group in the jury-selection
> process.

State v. Richie, 88 Hawai‘i 19, 41, 960 P.2d 1227, 1249 (1998)
(citing Duren v. Missouri, 439 U.S. 357 (1979)).

On appeal, Leus specifically contends that the circuit
court erred in denying his request to strike the jury pool
because thirty of the seventy-two individuals in the jury pool
indicated that they were close friends or related to "law
enforcement personnel."  Relying on Duren, Leus contends that
the jury pool disproportionately consisted of individuals with a

---

[9](. . .continued)
The jury is presumed to have followed the circuit court's instructions.
State v. Hauge, 103 Hawai‘i 38, 59, 79 P.3d 131, 152 (2003) ("This court has
repeatedly adhered to the construct that the jury is presumed to have
followed the circuit court's instructions." (cleaned up)).

connection to law enforcement, and for that reason did not comprise a reasonably representative cross-section of the community.

We conclude that the circuit court did not err in denying Leus's request to strike the jury pool. From what we are able to discern, it appears Leus is challenging the "exclusion" of individuals who are *not* affiliated with the law enforcement community. Leus has not, however, shown that this "group" is a "'distinctive' group in the community," "that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community[,]" and "that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." See Richie 88 Hawaiʻi at 41, 960 P.2d at 1249.

## G. Sufficiency of Evidence

Leus contends that "[his] convictions must be reversed where the testimony of the State's witnesses failed to establish substantial evidence to support his convictions." In reviewing the sufficiency of evidence, "[t]he test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion

of the trier of fact."  Richie, 88 Hawai'i at 33, 960 P.2d at 1241.  "Substantial evidence as to every material element of the offense charged is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion."  State v. Timoteo, 87 Hawai'i 108, 113, 952 P.2d 865, 870 (1997).  We conclude that there was sufficient evidence to support Leus's conviction for both Assault Against a Law Enforcement Officer in the Second Degree and Harassment.

With regard to Assault Against a Law Enforcement Officer in the Second Degree, the State must prove that a person "recklessly cause[d] bodily injury[10] to a law enforcement officer who is engaged in the performance of duty."  HRS § 707-712.6 (2014).  During the State's case-in-chief, Officer Masakazu Kurita (**Kurita**) testified that, while engaged in his official duties as a Honolulu Police Department (**HPD**) officer on the evening of October 5, 2015, Leus kicked his "right cheek area." Kurita testified that the kick occurred while Leus was in the police vehicle, after Kurita opened the door of the car.  Leus made eye contact with Kurita, stared at his face, "and out of nowhere, he [Leus] kicked me with his left foot."  Kurita

_____

[10]     "Bodily injury" is defined in HRS § 707-700 (2014) as "physical pain, illness, or any impairment of physical condition."

testified that "he hit me straight, and I felt my neck snap back and I felt pain to the left side of my neck and also my right cheek area." Kurita rated the pain as an "8 or a 9" on a scale of one to ten. Two other police officers, Officers Jesse Takushi (**Takushi**) and Robert Salanoa (**Salanoa**), who had witnessed the incident, testified that they saw Leus kick Kurita in the face.

With regard to harassment, "[a] person commits the offense of harassment if, with intent to harass, annoy, or alarm any other person, that person: (a) Strikes, shoves, kicks, or otherwise touches another person in an offensive manner or subjects the other person to offensive physical contact[.]" HRS § 711-1106 (2014). Takushi testified at trial that Leus grabbed his right shoulder. Takushi further testified that, after he warned Leus not to touch him, Leus grabbed the back of his neck. Takushi testified that he did not give Leus permission to touch him behind his neck, that he was offended by Leus's touch, and that Leus's touch caused him alarm. Kurita and Salanoa corroborated Takushi's account; they testified witnessing Leus grab Takushi after Takushi warned Leus not to touch him.

The record contains sufficient evidence to support Leus's conviction.

## III. Conclusion

For the foregoing reasons, we affirm the Judgment of Conviction and Probation Sentence entered by the circuit court on February 6, 2018.

DATED:  Honolulu, Hawaiʻi, November 8, 2023.

On the briefs:

William K. Li,
for Defendant-Appellant.

Chad M. Kumagai,
Deputy Prosecuting Attorney,
City and County of Honolulu,
for Plaintiff-Appellee.

/s/ Keith K. Hiraoka
Presiding Judge

/s/ Clyde J. Wadsworth
Associate Judge

/s/ Kimberly T. Guidry
Associate Judge